**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| N.J., a minor and individual with a disability, and her parents/guardians/next friends, E.J. and J.J. | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 3:25-cv-00006 |
| PENN-HARRIS-MADISON SCHOOL CORPORATION | ) ) ) ) | |
| Defendant. | ) ) | |

**PENN-HARRIS-MADISON SCHOOL CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESS, EMILY BUTLER**

COMES NOW the Defendant, Penn-Harris-Madison School Corporation (hereinafter "the Defendant" or "the School"), by counsel, Lewis & Kappes, P.C., and pursuant to Fed. R. Evid. 702, moves to exclude the report and testimony of Plaintiffs' expert witness, Emily Butler.

Plaintiffs failed to satisfy their burden of proving that the opinions of Emily Butler are admissible pursuant to Federal Rules of Evidence 702, *Daubert v. Merrell Down Pharm., Inc.*, 509 U.S. 579 (1993), and its progeny. As an initial matter, Ms. Butler's opinions should be excluded because her testimony is limited to Plaintiffs' claim regarding a due process hearing that has already happened. In addition, Ms. Butler's opinions are unreliable as they are not based on any established methodology or sufficient data, and her opinions are too generic to assist a decision-maker in this matter.

### I. Introduction

Plaintiffs have brought this lawsuit with the following claims: (1) Count I—Individuals with

Disabilities Education Act ("IDEA"), 20 U.S.C. §§1400, *et seq.*, and Indiana 511 IAC 7 ([Dkt. 1] at ¶¶ 51-55); (2) Count II—Breach of Contract (*Id.* at ¶¶ 56-60); (3) Count III—Section 504 of the Rehabilitation Act of 1973 and Americans with Disabilities Act (*Id.* at ¶¶ 61-68); and (4) Count IV—Attorneys' Fees under IDEA and Section 504 (*Id.* at ¶¶ 69-73).

Ms. Butler was retained to proffer opinions on Count I. Count I is an appeal of the Independent Hearing Officer's ("IHO") decision that the Plaintiffs failed to prove by the preponderance of the evidence that Defendant denied N.J. a free and appropriate public education or suffered any educational deprivation warranting compensatory education. *See* Administrative Record, Decision, 003564. Part of the decision included a conclusion of law that "It was not possible for the School to implement the Student's IEP as written." *See* Administrative Record, Decision, 003561. Part of N.J.'s IEP provided for a Registered Behavior Technician (RBT) to provide services to N.J. during the school day. *See* Administrative Record, 000215. The RBT, who was not a school employee, was supervised by a Board Certified Behavior Analyst (BCBA), who also was not a school employee.

Plaintiffs disclosed Emily Butler as their expert witness on July 22, 2025, and provided her expert report on August 12, 2025. Butler Expert Report, attached as Ex. 1; Butler Dep., attached as Ex. 2, pp. 2-3. Ms. Butler has worked as a principal at several schools and currently works as a climate and culture specialist for Indianapolis Public Schools. Butler Deposition, Ex. 2, p. 27, lines 17-19. In her expert report, Ms. Butler stated that she was retained to provide her opinion on:

   a. Whether certain principles and actions of Penn Harris Madison (PHM) Schools were consistent with educational best practices and with commonly accepted practices for complying with the Individuals with Disabilities Education Act (IDEA).
   b. Whether and how, if at all, PHM could have implemented the provision in N.J.'s Individualized Education Program (IEP) requiring it all to allow a third-party BCBA and RBT to support N.J. in the general education setting while also providing educational services.

Butler Expert Report, Ex. 1, pp. 2-3. Ms. Butler testified that she was also retained regarding inclusion of children with disabilities in public schools and collaboration with third-party providers in public schools, including how she would have operationalized "the evidence that was provided" and "critiquing things that could have gone better by the school system." Butler Deposition, Ex. 2, pp. 20-21, 23-24.

In her expert report, Ms. Butler proffered the following four opinions:

1. PHM should have been able to accommodate an outside RBT who, under the supervision of an outside BCBA, supported N.J. throughout the day in the general education classroom. This arrangement was not only logically possible, but was ideal for both N.J. and the school.
2. PHM failed to plan logistically to implement N.J.'s IEP.
3. PHM failed to confirm staff's individual responsibilities towards the implementation of N.J.'s IEP.
4. PHM failed to monitor the implementation of N.J.'s IEP and then failed to intervene when components were not being implemented.

Butler Expert Report, Ex. 1, p. 11.

Ms. Butler has finished her work on this matter aside from any testimony she would offer, and she is ready to testify as to her final opinions on this matter. Butler Deposition, Ex. 2, p. 16, lines 11-19; 23-24, lines 10-15; 194-95, lines 10-24. No supplement to Ms. Butler's original expert report has been provided to Defendant.

## II. Legal Standard for Admission of Expert Testimony

Expert testimony is admissible under Federal Rule of Evidence 702 if the testimony is relevant to a fact in issue, is based on sufficient facts or data, and results from reliable scientific or other expert methods that are properly applied. *Cole v. Crown Equipment Corp.*, 2025 WL 2590269, at *2 (N.D. Ind., Sep. 5, 2025) (citing *Daubert*, 509 U.S. at 592-93). Under this rule and *Daubert*, courts must ensure that expert testimony admitted into evidence is "both reliable and relevant." *Tyler v. JP Operations, LLC*, 342 F. Supp. 3d 837, 844 (S.D. Ind.

3

2018).

The Seventh Circuit has established three requirements for expert witnesses: (1) the witness must be qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning or methodology underlying the testimony must be scientifically reliable; and (3) the testimony must assist the trier of fact to understand evidence or to determine a fact in issue. *Dowdy v. United Seating and Mobility, LLC,* 2026 WL 890244, at *1 (S.D. Ill. Apr. 1, 2026) (quoting *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007)) (internal citations omitted).

The proffering party bears the burden to establish the admissibility of expert testimony by a preponderance of the evidence. *Cole*, 2025 WL 2590269 at *2 (citing *Varlen Corp. v. Liberty Mut. Ins. Co.*, 924 F.3d 456, 459 (7th Cir. 2019)). The court is charged with keeping experts "within their proper scope, lest apparently scientific testimony carry more weight . . . than it deserves." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) (internal quotation omitted). The district court properly excludes expert witness testimony when there is too great an analytical gap between the data and opinions proffered such that the opinion amounts to nothing more than simply statements. *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 837 (7th Cir. 2015) (citations omitted).

### III. Ms. Butler's Opinions are Foreclosed by the Administrative Record

Ms. Butler has been retained to provide opinions only on the first count of this suit, IDEA and Indiana law. Butler Expert Report, Ex. 1, pp. 2-3; Butler Deposition, Ex. 2, Ex. 2, p. 24, lines 4-23; p. 25, lines 5-13; p. 26, lines 3-20. This claim is an appeal of an administrative action – a due process hearing in which an Independent Hearing Officer has already made a decision. *See* Administrative Record 003529-003605. Although Plaintiffs had stated that they intended to move

to reopen and supplement the record, see Docket no. 38, Plaintiffs' counsel has now represented that they will not do so.

### IV. Ms. Butler's Opinions are Unreliable

Even when a witness is qualified, "expert testimony must also be 'based on sufficient facts or data; [be] a product of reliable principles and methods; and [reflect] a reliable application of the principles and methods to the facts of the case." *Cole*, 2025 WL 2590269 at *3 (quoting Fed. R. Evid. 702). "A qualified expert cannot offer opinions based only on their 'say-so.'" *Cole*, 2025 WL 2590269 at *3 (citing *Sturgis v. R&L Carriers, Inc.*, 554 F. Supp. 3d 976, 981 (N.D. Ind. 2021) (internal citation omitted).

Yet this is exactly what Ms. Butler attempts to do. When asked if there is "a commonly established method of evaluating special education services in schools," Ms. Butler testified that there is not to her knowledge and that her opinions were based on her being a "logical person." Butler Dep., Ex. 2., p. 78, lines 12-25; p. 79, lines 3-5. And indeed, the only sources relied upon by Ms. Butler in her report that are not specific to this case or the School are a curriculum website and a website from the IRIS Center. *See* Butler Report, Ex. 1, p. 3.

Ms. Butler simply relies on her experience for all of her opinions. Butler Dep., Ex. 2, p. 72, lines 3-9; p. 151, lines 13-25; p. 152, lines 17-24; p. 153, line 5-17; p. 162, lines 20-25; p. 163, lines 7-18; p. 164, lines 1-14; p. 180, lines 5-16; p. 183, lines 4-25; p. 184, lines 1-25; p. 185, lines 1-20. However, she admits that she does not have experience being a Director of Special Education or a Special Education teacher. Butler Dep., Ex. 2, pp. 44, lines 22-24; 49, lines 2-3. Ms. Butler admits that she:

1. Has had no training on the IDEA in the past five years;
2. Has had no training with Article 7 in the past five years;
3. Has not published in any professional journals in the last ten years; and
4. Has not presented at any professional conferences in the last ten years.

Butler Dep., Ex. 2, pp. 33, lines 4-12; 186, lines 9-14.

Ms. Butler testified on the specific bases for her opinions as follows:

1. For opinion 1, the only basis for her opinion was experience. Butler Dep., Ex. 2, p. 134, lines 4-20; p. 135, lines 11-19.
2. For opinion 2, the only basis for her opinion was the exhibits she reviewed "and then again asking if there were any other artifacts related to some of the things that I would expect to see in a school and not having them" based on her experience. Butler Dep., Ex. 2, p. 151, lines 13-20; p. 152, lines 6-25; p. 153, line 1.
3. For opinion 3, Ms. Butler stated that the basis of her opinion were the exhibits relied on and that it is the responsibility of the school to communicate expectations. Butler Dep., Ex. 2, p. 162, lines 18-25; p. 163, lines 7-25; p. 164, lines 1-16.
4. For opinion number 4, Ms. Butler testified that her opinion was based on

   My experience as an administrator, my training programs and my knowledge of best practice of my colleagues, also working with school districts and people in the special education department, again, about what should be in place and what my expectations as a principal are. I would even say frankly, the performance evaluation tools in districts I've worked with for special education teachers outline some of this sometimes. Butler Dep., Ex. 2, p. 180, lines 5-16; *see also* Butler Dep., Ex. 2, p. 183 , lines 4-25; p. 184, lines 1-25; p. 185, lines 1-20

Instead of relying on tested and commonly accepted methodologies, Ms. Butler claims all of her findings were based on her experience and reviewing exhibits. However, Ms. Butler also testified that she did not have the information she needed to form some of her opinions. Butler Dep., Ex. 2, pp. 71, lines 23-25; p. 72 , lines 3-17; p. 79, lines 3-5; p. 82, lines 1-22; p. 117, lines 4-25; p. 118, lines 1-25; p.119, lines 1-5;  p. 151, lines 1-25; p. 152, lines 1-16;  Specifically, she said that she had not been provided documents from Plaintiffs that she had wanted, including the school's schedules, communications "advocating for additional resources or support," and other items. Butler Dep., Ex. 2, p. 79, lines 11-25; p. 80, lines 1-4, 23-25; p. 81, lines 1-25; p. 82, lines 1-25. She also testified that she did not receive nor review the May 30, 2024, psychoeducational review from Dr. Michael Manis for her report. Butler Dep., Ex. 2, p. 85, lines 3-25. Many of her opinions stem from this admitted lack of information. *See, e.g.*, Butler Expert Report, Ex. 1, pp. 14-18. She also admitted that she was not aware of training or certification contents for the RBTs

or BCBAs. Butler Dep., Ex. 2, p. 91, lines 21-25; p. 92, lines 1-25; p. 93, line 1. And although she stated that this system would have been ideal, she admitted that of all the schools in various states she has worked in (over 10 to our count) over the last 20 years, she only recalls working with 2-3 RBTs, and that was at a school in the State of Washington. Butler Dep., Ex. 2, p. 100, lines 4-20; *see also* Butler Expert Report, Ex. 1, pp. 19-20 (Butler Resume).

Ms. Butler's unsupported, unscientific opinions constitute pure speculation that she could do better than the school. Indeed, she testified that she was retained to "critique[] things that could have gone better by the school system." Butler Deposition, Ex. 2, p. 20, lines 21-25; p. 21, lines 1-16. As in *Abarqa v. Franklin Cty Water Dist.*, 813 F. Supp. 2d 1199, 1213 (E.D. Ca. 2011), Ms. Butler's testimony "suggests a complete lack of scientific objectivity and the assumption of an advocate's role." As such, Plaintiffs' have failed to demonstrate how Ms. Butler's proffered conclusions "reflect[] a reliable application of any methodology," and her conclusions should be excluded. *See Cole*, 2025 WL 2590269 at *5 (finding that "Plaintiffs have failed to show how [expert witness's] statement is admissible as expert opinion testimony under Rule 702").

## V.  Ms. Butler's Opinions are Irrelevant

Ms. Butler's opinions are irrelevant and cannot help the trier of fact because the trier of fact has already made her decision in this matter and because Ms. Butler's opinions regarding the IEP and its implementation are generic and therefore irrelevant to this matter.

Initially, Ms. Butler's opinions are irrelevant and cannot help the trier of fact because her opinions are all related to an administrative hearing in which the trier of fact *has already made their decision*. The administrative record in this case is exhaustive – spanning over 7,500 pages, the administrative record includes 5 five days of testimony, over 130 exhibits, and the testimony of several expert witnesses, *including Plaintiffs' expert witnesses*. Plaintiffs have had their chance

in front of the trier of fact. Plaintiffs' attempts to use Ms. Butler's report and testimony in this matter thwarts the process and impermissibly makes the district court the trier of facts. *See Cooper v. Sch. City of Hammond*, 2023 WL 5898438 at *5 (N.D. Ind. Sep. 8, 2023) (citing *Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 895, 901 (7th Cir. 1996)).

Regardless, Ms. Butler's opinions are irrelevant because they are too generic to be helpful, resulting in nothing more than simply statements. Plaintiffs' claims are about whether the Defendant provided the appropriate services *to the Plaintiffs' daughter*. But Opinion 1 centers on whether *it is possible* in general to have a BCBA or RBT "incorporated in a school setting." Butler Dep., Ex. 2, p. 72, lines 5-6. However, the pertinent question is *not* whether an RBT can *ever* be incorporated in a school setting, but whether the School violated the law in this matter. Ms. Butler also asserted in her report that the school could have ensured implementation of all its students' IEPs. Butler Report, Ex. 1, p. 11, para. 46. She testified that she did not know how many IEP's there were at the school, and did not review any of the IEPs. Butler Dep., Ex. 2, p. 120, lines 4-10. When asked the basis of her "assertion that the school could have ensured implementation of all its students' IEPs," Ms. Butler testified:

> Well, it goes back to, again, who's ultimately responsible, which is the school district as well and so it's in the school district's best interests to ensure that schools are successful implementing IEPs, since it is a legal requirement and so again, it goes back to making sure that there's sufficient staff, you know, there's whatever resources or supports are needed to ensure that IEPs can be implemented.

Butler Dep., Ex. 2., p. 120, lines 11-22. In other words, her testimony is that the IEP *must* be possible because the school *must* follow it. This statement does not require an expert, and does not aid the trier of fact in any way. Ms. Butler also stated that the IEP in question "was not only logistically possible, but ideal." Butler Expert Report, Ex. 1, p. 12. When asked what the basis for her opinion was, Ms. Butler testified that "the thing that stood out to me most, is the fact that the

family paid for the services and they weren't paid for by the district." Butler Dep., Ex. 2, p. 124, lines 18-21; *see also* generally pp. 124-26. Her opinion here is that the IEP is ideal because of the source of payment. However, the question for the Court is not the source of payment, but whether the provision of services met the requirements of the law.

Ms. Butler's Opinions 2-4 regarding the implementation of the IEP fare no better. Ms. Butler testified that she has never worked at Penn-Harris-Madison schools. Butler Dep., Ex. 2., p. 70, lines 14-16. Therefore, to opine on the implementation of the IEP, she would need to review and analyze information sufficient to form an informed opinion. But this did not happen. Ms. Butler testified that "there were a few questions about things the school district did or didn't do that I'd either want more information about or – well, that I'd largely want more information about, but were not the full scope of my report." Butler Dep., Ex. 2, p. 72, lines 10-18; *see also* p. 79, lines 11-25; p. 80, lines 23-25; p. 81, lines 1-11; p. 82, lines 2-22; p. 118, lines 1-25; p. 119, lines 1-5; p. 151, lines 17-25; p. 152, lines 1-16. Some of the documents she discusses had already been produced by her deposition; another was produced after her deposition based on her statement. However, they were not reviewed for her original expert report and Ms. Butler never supplemented her report. Instead, she admitted that she submitted an expert report on incomplete information. A trier of fact is not aided by the opinions of an expert who admits to not having reviewed necessary information.

Specifically, for Opinion 2, Ms. Butler stated that she uses various organizations tools such as schedules to help her "plan logistically." Butler Expert Report, Ex. 1, pp. 14-15, paras. 63-66. An expert is not needed by this court to provide information on basic organizational tools that are helpful in implementing programs. There is nothing in this opinion that is unique to an IEP, or N.J.'s IEP. Regardless, as Ms. Butler did not review any schedules or other communications, her

opinion on the School's planning is irrelevant. Some of these documents had been previously produced. And even though a master schedule was not requested of Defendant until Ms. Butler's deposition, Defendant produced a master schedule on February 13, 2026, the same week as Ms. Butler's deposition. No supplemental expert report was produced.

For Opinion 3, Ms. Butler opines that the School failed to confirm staff's individual responsibilities towards implementation of the IEP. She bases this opinion on communications in which she claims that there were "differences of opinion" regarding provision of services. Butler Expert Report, Ex. 1, p. 15, para. 70. Just because there is a different of opinion does not mean that the School failed to do something. Regardless, an expert in school leadership is not necessary to render such an opinion.

Finally, for Opinion 4, Ms. Butler opines that the School failed to monitor IEP implementation and failed to intervene. Butler Expert Report, Ex. 1, pp. 16-18, paras. 77-85. However, Ms. Butler testified that to determine monitoring, she relied on knowledge about evaluation tools in districts. She then admitted that she is not aware of what performance tools for special education teachers are used in the School. Butler Dep., Ex. 2, p. 180, lines 17-19.

None of these opinions would aid a fact-finder as they are all based on the general experience of implementing a program – nothing in Ms. Butler's testimony provides useful information regarding N.J.'s IEP or its implementation that requires an expert. The harm in not excluding Ms. Butler's statements is that it risks giving them more weight than they deserve.

## VI. Conclusion

Plaintiffs failed to satisfy their burden of proving that the opinions of Emily Butler are admissible pursuant to Federal Rules of Evidence 702, *Daubert,* and its progeny. Ms. Butler's opinions should be excluded because her testimony was only for her claims regarding the due

process hearing, which already has a record. Additionally, Ms. Butler's testimony should be excluded because Ms. Butler uses no methodology, much less scientifically reliable methodology, as her opinions are based purely on her own unproven assumptions and speculations; and her opinions are irrelevant and not helpful to the trier of fact. Ms. Butler's testimony essentially comes down to her opinion that she could have done better than the school. Even if that's true, it is not the standard for expert testimony.

Dated this 24th day of April, 2026.

Respectfully submitted,

**LEWIS & KAPPES, P.C.**

*/s/ Scott A. Pyle*
Monica J. Conrad, Attorney No. 17820-98
Sarah W. Cudahy, Attorney No. 27388-49
Scott A. Pyle, Attorney No. 25060-89
**LEWIS & KAPPES, P.C.**
8585 Broadway, Suite 610A
Merrillville, IN  46410
Ph:  (219) 648-2072; Fax:  (219) 525-4980
Email:  mconrad@lewis-kappes.com
         scudahy@lewis-kappes.com
         spyle@lewis-kappes.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of April 2026, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Scott A. Pyle*
Scott A. Pyle

11